TALIAFERRO, Judge.
Plaintiff, Mrs. Ollie Brady, was seriously injured when sheu-an into or was struck by the one-ton truck of the defendant, Victor H. Whitehead, on Highway No. 80, a few miles west of the City of West Monroe, Louisiana, about the hour of 7:00 o’clock the morning of July 31, 1950. She instituted this suit to recover damages for her injuries, pain and suffering. Her husband, Martin L. Brady, joined the suit and sued to recover judgment for the amount of physicians’, hospital and other bills incurred in the treatment of his wife.
Defendant was driving his truck westerly. The plaintiffs reside about one hundred feet (100') south of the highway, whose general course is easterly and westerly, opposite a grocery store, some twenty-five (25) or thirty (30) feet north of the eighteen (18) foot concrete slab. Just prior to the accident Mrs. Brady left her home and proceeded northerly for the purpose of making a purchase at the mentioned grocery store. To cross the highway at that time she also had to cross the path of the on-coming truck. The impact occurred on the gravel some nine (9) feet from the north edge of the concrete slab.
On behalf of Mrs. Brady, it is alleged that when she reached the highway she observed defendant’s truck traveling westerly, but believed she had ample time to cross the highway before the truck could reach the point where she intended to go over; and, therefore, she proceeded forward and had cleared same some nine feet (9') when the accident occurred. She further alleged that as she stepped from the road’s shoulder onto the gravel covered space in front of the store; to which she was going, “her attention was attracted by some neighbors to the west, momentarily, and that at that time the truck drove off of the highway and ran into her”, etc.; that the truck was traveling at a rate of forty (40) miles per hour, struck her with great force and without prior signal or warning; that the road for a considerable distance on both sides of the locus of the accident is approximately straight and free of obstructions to vision.
Specific instances of negligence, allegedly causing the accident, accredited to defendant, are:
Not keeping his vehicle under control; traveling at a speed in excess of that fixed by law; running off of the highway and striking plaintiff without giving any signal of his approach.
It is pleaded alternatively, that defendant had the last clear chance to avoid the accident and did not avail himself of it.
Defendant, while admitting that the accident occurred at the time and place alleged, denies each and every other allegation of fact of the petition. Further answering, the defendant avers that while traveling at a speed of approximately thirty (30) miles per hour on said highway, east of the locus of the accident, fifty (50) feet ahead of him he saw a woman, afterward identified as Mrs. Brady, start across the highway; that at the same time he observed a trailer-truck approaching from the west, and apparently the woman became excited and bewildered upon finding herself in the path of this on-coming vehicle, and began to trot and/or run across the highway; that he then applied his brakes and swerved the vehicle to his right and off the highway in the hope of not colliding with the woman, his speed being five (5) miles per hour when she ran into its left side, to the rear of the cab. Defendant additionally alleged that because of the facts above narrated Mrs. Brady’s own negligence created the emergency that culminated in the near tragedy for which she seeks indemnification.
Plaintiffs’ demands were rejected and the suit dismissed. They appealed.
The highway slopes gradually upward from the east to — or near to — the point thereon where Mrs. Brady crossed it, and then curves southerly. The place of her crossing was about the center of the segment.
Mrs. Brady denies that there was a truck and trailer coming toward her from the west immediately prior to the accident, but does say that at that time her attention *271 was momentarily attracted in that direction by some neighbors. However, not one of these neighbors was introduced as witnesses in the case. She also testified that as she looked westerly the truck of defendant drove off of the highway and ran into her. She admits that she saw defendant’s truck when it was about four hundred (400) feet away and further admits that she never looked in that direction again prior to the collision.
Defendant’s testimony follows the allegations of his answer. He is positive that when he observed plaintiff in the act of getting upon the concrete slab, he was not over fifty (SO) feet away, traveling at a speed not over forty (40) miles per hour, which was not excessive then and there; that another truck was approaching from the west; that at that juncture Mrs. Brady, looking westerly, began to run across the road at right angles to his lane of travel'; that he acted instantly and pulled his vehicle to the north because of the presence of the other truck to his left, and plaintiff being ahead of him.
According to defendant’s testimony, Mrs. Brady traveled about twenty-six (26) feet while he traveled fifty (50) feet. If this be true, she must have been running, as he and his witnesses say. It is certain he applied the brakes forcefully as he left the pavement because skid marks thirty-three (33) feet long were impressed in the gravel. In addition to this, the truck traveled only some six (6) feet after the impact, and Mrs. Brady’s body was about that distance from the left rear wheel when the vehicle stopped. Evidently, she was not struck by any part of the front end of the truck, but ran into its side, as contended.
Defendant’s truck was empty. He,had with him a grandson, Thomas Austin Driver, Jr., and two other boys, one of whom did not see the accident. The other of these two boys and the grandson corroborated defendant in his version of the facts culminating in the accident.
We quote a portion of young Driver’s testimony as we believe it true, and that it accounts for Mrs. Brady not seeing defendant’s truck in time to avert the accident and for defendant leaving the pavement, viz.:
“Q. She was just leaving the concrete and you left it and went off the concrete at the same time she did? A. No, sir. At the time we got off of it she was about in the middle of the road looking backward coming faster; she was running — it looked just like for everything she could get.
“Q. Was she coming toward you? A. Yes, sir; coming right straight towards the store.”
No one testified in support of Mrs. Brady’s account of the accident, save one man who was in his truck going easterly. He is positive there was no truck in sight ahead of him just prior to the accident. He did not see the accident but passed the scene within a few seconds thereafter. We think it entirely possible that the third truck, about which defendant and his witnesses testified, was there, and had passed out of view around the curve when this witness of plaintiffs’ was not in sight of the locus.
Of the two versions of the facts of the accident, that of defendant is the more reasonable. Certainly, there was in front of defendant a situation that impelled him to suddenly quit the road in the effort to avert trouble. He would not have done this but for impending danger. Mrs. Brady’s action, it seems certain, was the cause for him driving the truck from the pavement, and, this being true, we accept defendant’s testimony as to the nature and time of her action. Whether her attention was directed to the west because of an approaching truck, or to her neighbors, is immaterial to the ultimate outcome. The fact remains that she did so at a time when she should have been closely watching for traffic in both directions. Her action in the respect mentioned created an emergency and forced defendant to instantly resolve what to do in his effort to avert the impending collision. If he erred, and we do not think so, to plaintiff al'one should be charged the results. But, the fact that plaintiff ran discounts materially the weight of her allegation that she looked westerly at some neighbors just before the accident.
*272 The facts place the case without the realm in which the doctrine of the last clear chance finds application. The doctrine applicable to suddenly created emergencies is peculiarly applicable.
The trial judge gave written reasons for judgment rejecting plaintiffs’ demands. He placed responsibility for the accident squarely upon Mrs. Brady. We see the case as did he. >
For the reasons herein assigned, the judgment from which appealed, is affirmed with costs.